McIlvaine, J.
No question arises in this case under the •special legislation of this state in relation to the sale of patent rights, the notes in controversy having been executed prior to May 5, 1868.
The first instruction requested by the defendant below, and refused by the court, was, in substance, that knowledge on the part of the plaintiff, before he purchased the notes sued on, that they had been given for a patent right for an improvement in a bedstead, though he did not know that the alleged improvement was in fact worthless, was •sufficient to put him on inquiry as to the validity of the notes as between the original parties. There was no error in refusing this instructio n. Letters patent are issued by authority of law to inventors and discoverers of new and useful inventions and improvements only. A valuable property is thereby intended to be secured to the patentee, and no ■presumption, either of law or of fact, arises that the subject *559 of the patent is not new and useful, or that fraud was employed in procuring the letters patent, or in vending the rights secured thereby.
The second instruction requested and refused, in addition to the knowledge stated in the first, assumed that the plaintiff had further notice that the amount agreed to be paid by the defendant for the patent right was large, to wit, $9,000, and that the holder from whom he.was about to purchase the notes would not indorse or otherwise guarantee their payment. This instruction was also properly refused. The notes were payable to “ bearer,” and were therefore transferable by delivery only. No just suspicion, much less presumption, of fraud or want of consideration could arise from the form of the notes, or from the fact that the holder proposed to transfer them without indorsement. And as to the knowledge of the plaintiff below in regard to the amount agreed to be paid by the defendant for the patent right, it is enough to say, that, as matter of law, he was not thereby charged with notice that the sale was tainted with fraud. Indeed, the value of such property is so essentially a matter of mere opinion, that it would be difficult to say, in any particular case, what weight, if any, proof of such knowledge should have, if unconnected with other suspicious facts or circumstances.
The next instruction requested and refused, and the instruction given in lieu thereof, are thus stated in the record:
“8. Said defendant also asked the court to charge the jury that if they found that these notes were without consideration, and were procured from the maker by the fraud and fraudulent misrepresentations of said payee, Kendrick, and the plaintiff, having notice of, or believing these facts, went immediately, before purchasing them, to Sackett, tho maker, and informed him that he was about purchasing said notes, and inquired of him if they were all right and would be paid, and said Sackett then, in good faith and in ignorance of said want of consideration and fraud, informed him that they were all right and would be paid, yet still *560 this would not entitle the plaintiff to recover on the said' notes unless he called Sackett’s attention to the supposed, facts or defects, if he supposed him ignorant thereof;. which charge the court refused to give, but did charge the jury upon this subject that if the notes were without con- • sideration and procured from the maker by the fraud and fraudulent misrepresentations of said Kendrick, and the-plaintiff having such information or notice of their want of consideration and fraud as put him upon inquirjr touching* the consideration and means by which said notes were procured, that it would be the duty of the plaintiff before purchasing the notes to inquire of* the defendant, or otherwise-obtain information in respect to the consideration of said notes, or other means by which they were obtained, before-purchasing them; but that, if he called upon said defendant immediately before purchasing said notes and made inquiry of him in respect to their validity, and informed him that he was about to purchase them, and desired to know if they were all right, and that in answer he was informed by said defendant that said notes were all right,, that he would pay them when due, that he hoped the plaintiff would buy them; or if the defendant, by the use of any other words, said to the plaintiff substantially that he could safely buy said notes, then the plaintiff could safely buy said notes without further inquiry or information to Sackctt, unless he made such inquiry for the purpose of entrapping or overreaching the defendant, in which case, he could not recover by reason of the declaration'of said Sackett.”
In the first place, we must determine the meaning of the-following language contained in this request, to wit, “the plaintiff having notice of, or believing these facts.” If this> language simply signifies that the plaintiff had formed an opinion, based upon some unascertained theory, that the patented improvement, for which the notes were given, was not novel or useful, and that, therefore, the representation made by Kendrick to the contrary was false and fraudulent,, then, we think, the instruction was properly refused. We are of opinion, however, that this language naturally and> *561 necessarily imports that the plaintiff had knowledge of such material facts in relation to the sale of the pateut right, as would reasonably induce the belief, and did, in fact, induce him to believe, that the notes had been obtained from the defendant by fraud and without consideration. And, this being the meaning of the phrase, the defendant was entitled to have the instruction given to the jury as requested, or in some other form equivalent thereto.
It is undoubtedly true, that a holder of negotiable notes purchased before maturity, and for value, but with knowledge of defenses as against prior holders, may, nevertheless, show facts, which, in equity and good conscience, estop the maker from setting up such defenses as against him, as, for instance, where, before purchase, he communicated to the maker all the information affecting the validity of the notes, that had come to his knowledge, and the maker thus informed, assured him-that the notes were all right, and would be paid at maturity. In such case, the party would have a right to rely upon such declarations, and if, on the faith thereof, he purchased the notes, the maker would not be permitted to set up such defenses as against him. But the facts assumed in this request were, that the notes sued on had been obtained from the defendant by fraud and without consideration ; that the plaintiff had knowledge of these facts; that the defendant was ignorant thereof, and that the plaintiff believed him to be so ignorant. Under these circumstances, the plaintiff, without communicating his knowledge concerning the invalidity of the notes, inquired of the defendant, whether they were all right and would be paid at maturity ; and having received an answer in the affirmative he purchased them, and now relies upon the declarations of the defendant, so obtained, as an equitable estoppel against such defenses.
The question thus presented for our determination is this: Had the plaintiff a right to rely and act upon the statements of the defendant thus procured to be made? We think not. It was his plain duty, under the circumstances, *562 to inform the defendant of the facts affecting the validity of the notes which had come to his knowledge, before purchasing them. Eair dealing required this, and the withholding of such information, under such state of facts, was, in law and in good conscience, a fraudulent suppression of the truth, and the plaintiff took the notes subject to all their infirmities, which had come to his knowledge.
In lieu of the instructions asked for, the court, in substance, instructed the jury, that the promises or declarations obtained by the plaintiff from the defendant upon inquiry as to the notes, could not be set up by way of estoppel, if the inquiry was made for the purpose of entrapping or overreaching him. No fault can be found with this instruction. But beyond this, the defendant had a right to have the court say to the jury, that the facts assumed in the request, if found by the jury, should, as a matter of law, be regarded by them as sufficient proof of a purpose to entrap and overreach him. This the court refused to say, aud in refusing, we think it erred.
As to the refusal to give the fourth instruction requested, it is only necessary to add to what has already been said, that the true test for determining whether the plaintiff had a right to act upon the declarations made by the defendant touching the validity of the notes, does not depend upon the impressions left upon his mind as to the truth or falsity of his previous information, but upon the fact whether or not such declarations were obtained under circumstances consistent with honesty and good faith.
For error in refusing to instruct the jury as prayed for in the third request, the judgment is reversed.